## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **: CRIMINAL ACTION** |
| | **:** |
| **v.** | **: NO. 4:23-CR-162** |
| | **:** |
| **MATTHEW LAMPI** | **:** |

### DEFENDANT'S SENTENCING MEMORANDUM

**AND NOW,** the Defendant, Matthew Lampi, by and through his attorney, Joseph R. D'Andrea, Esquire, respectfully submits this memorandum in support of the Defendant under 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005). As detailed in this memorandum, these charges arose from Mr. Lampi's participation in Interstate Transportation of Stolen Goods, Aid and Abet. The Defendant respectfully requests a sentence within the recommended guideline range, that of probation or probation with the condition of home detention.

### I.   PROCEDURAL HISTORY

On June 13, 2023, a Grand Jury sitting in the Middle District of Pennsylvania filed a two count Indictment charging the Defendant with one count of Conspiracy, 18 U.S.C. § 371, and one count of Interstate Transport of Stolen Goods, Aid and Abet, 18 U.S.C. § 2314, 2. On January 30, 2024, Mr. Lampi plead guilty to Count 2 of the Indictment before this Court pursuant to a written plea agreement. Sentencing is scheduled for January 2, 2025, before this Court.

### II.   PERSONAL HISTORY

Matthew Lampi is a 53-year-old man, who was born in Robbinsdale, Minnesota. Mr. Lampi had a very troubled childhood. Both of his parents died from drug overdoses, as well as his brother, Patrick. The Presentence Report accurately describes the chaotic life that Matthew Lampi

was raised. Due to his parents being drug addicts, Matthew was placed in foster care as an infant. The Defendant has been diagnosed with mental illness, due to the trauma he experienced as a child, after he witnessed his father die in his arms at 17 and also watched his mother be "carried out in a body bag." Matthew Lampi did not choose his parents but was born into a family of drug addiction and suffered the severe consequences of being raised in that environment.

The Defendant began using alcohol at an early age. Because his parents were drug addicts, alcohol and drugs were freely allowed in his house. The Defendant began using alcohol at age 12, and by age 16 was frequently intoxicated. Throughout his teenage years, his alcohol and drug use occurred to be problematic. By the time Matthew was 20, he was convicted of a burglary but took the steps to rehabilitate. He completed a inpatient rehabilitative program and has maintained sobriety since.

Though the Defendant dropped out of high school in 1989, he eventually earned a graduate equivalent diploma in 1992 and then went on to earn an associate degree as well as a bachelor's degree, finally graduating with a 3.72 grade point average. It is evident that the Defendant had a horrible upbringing, which affected his early life, but had the strength and fortitude to become sober, earn college degrees, and be gainfully employed. Most individuals under the same circumstances would not have had the desire nor the ability to change their lives.

III.  <u>**LEGAL STANDARD**</u>

After United States v. Booker[1], district courts are no longer required to impose a Guidelines sentence. The Guidelines should still be "the starting point and the initial benchmark,"[2] but "district courts may impose sentences within statutory limits based on appropriate consideration of all the factors listed in [18 U.S.C.] § 3553(a)."[3]  That statute provides:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (¶2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)  the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence[s] and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . .;

---

[1] 543 U.S. 220 (2005).

[2] *Pepper v. United States*, 562 U.S. 476, 490 (2011) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007))

[3] *Id.*

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.[4]

## IV.    APPLYING THE ADVISORY FEDERAL SENTENCING GUIDELINES IN THIS CASE

Ever since the Supreme Court's decision in the *United States v. Booker*, 543 U.S. 220 (2005), the Federal Sentencing Guidelines have no longer been mandatory, but rather are advisory with respect to a District Court's decision in fashioning an appropriate sentence. The Guidelines are merely a "starting point and the initial benchmark" in the Court's search for an appropriate sentence. *Gall v. United States*, 552 U.S. 38 (2007). In *Kimbrough v. United States*, 128 S.Ct. 558 (2007), the Supreme Court pointed out that the Sentencing Reform Act, as modified by its decision in *Booker* "contains an overarching provision instructing District Courts to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." *Id.* at 570. This provision must be honored through reference to all of the factors set forth under 18 U.S.C. § 3553(a). As such, consideration of the Sentencing Guidelines is just but one factor for the Court to consider when exercising its tremendous discretion in determining the appropriate sentence.

In this case, the Presentence Investigation Report ("PSR") calculates a total offense level of 6, a criminal history category of 1, and a Guideline imprisonment range of 0-6 months.

As a general proposition, the courts "may vary from Guideline ranges based solely on policy considerations including disagreements with the Guidelines". See *Kimbrough*. It is respectfully submitted that in this case the applicable Guidelines are unreasonable and, by application, irrational.

---

[4] 18 U.S.C. § 3553(a)

Under the circumstances, the strict application of the United States Sentencing Guidelines in this particular case exposes what United States District Court Judge Jed S. Rakoff warned as: "the utter travesty of justice that sometimes results from the Guidelines fetish with abstract arithmetic, as well as the harm that Guideline calculations can visit on human beings if not cabined by common sense." *United States v. Adelson*, No. 05-cr-00325-JSR (S.D.N.Y.)

## V.    APPLYING THE RELEVANT FACTORS UNDER 18 U.S.C. § 3553(a)

### A.  Nature, Circumstances, and Seriousness of the Offense

There is no question that the nature and circumstances of the facts of the case are troublesome. The Defendant, a Minnesota resident, has been gainfully employed as a tattoo artist for a number of years. In the Defendant's early life, he struggled with drug addiction but for many years now has been clean and sober. Throughout his sobriety, Mr. Lampi has led a respectful and law-abiding life.

Matthew Lampi became a collector of "oddities." The oddity world also encompasses human body parts. It is understandable that the vast majority of people would find great offense to the possession and/or trading of human body parts. To the surprise of the undersigned counsel, it has been learned that the possession and/or sale of human body parts is not a violation of any known state or federal criminal statutes.

Though Mr. Lampi's penchant for collection and trading human body parts would be found revolting by most people, it remains an activity that is not violative of any criminal statutes. Even more fascinating, considering the facts contained in the companion cases, and in particular

concerning the morgue of the Havard University Medical School, legislation has not passed criminalizing this underground activity.

Mr. Lampi's was a minor participant in this elaborate buying and selling of human body parts. By the Government's own admission, his role was minimal, as was the value of his theft. He has not been alleged to have stolen any items, nor has he conspired to steal any items with any other participants.

Matthew Lampi simply was a collector, a collector of items that many would consider to be offensive. His passion for his collection caused him to cross the line and eventually purchased certain items that were known to be stolen.

One of the items that Matthew Lampi purchased was a fetus that was stolen. He has acknowledged and pleaded guilty to the same. The fetus was mummified, causing the Defendant to have no knowledge of how long it was in that mummified state. Frankly, Mr. Lampi was under the impression that the fetus he purchased was dead for many years. The mumification process makes a small object even smaller and gave the idea to him that it had died long ago.

Once Mr. Lampi discovered what really transpired, he immediately cooperated with law enforcement for the return of the fetus. Furthermore, Mr. Lampi continued to cooperate with authorities throughout the investigation, giving substantial assistance to the Government's prosecution in other related matters.

The Government argues in its Sentencing Memorandum seeking a substantial upward departure of such that would provide for a twenty-four (24) month incarceration sentence for Lampi. In the Government's emotionally-based argument it is attempting to ask this Court to do

something outside of its power – that is to legislate. To penalize something that is not a violation of a criminal statute, namely the possession and sale of human remains is something not within the purview of this Court. This Court must interpret the facts and apply the guidelines in an appropriate fashion, but not punish more severely than necessary, where the law does not apply.

That is not to say that Mr. Lampi did not violate the law. He did. Mr. Lampi engaged in the Interstate Transportation of Stolen Goods and he is guilty of that crime. He is guilty of that Interstate Transportation of Stolen Goods with a value of a financially low value. The emotional value is great, but that should not factor into the Court's decision regarding sentencing.

A Court's obligation is to apply the guidelines on the facts presented. The Government is seeking this Court's intervention to legislate activities that are not criminal acts. The only criminal act in the matter of Mr. Lampi is that deals with stolen property with a minor financial value. The Government seeks this Court to attach a very large emotional value to his guidelines in seeking a twenty-four (24) month term of imprisonment. Such a request by the Government equates to nearly a ten-level upward departure. Such an upward departure of the sentence was never contemplated by the Sentencing Commission. Guideline calculation for Mr. Lampi is for a period of incarceration from zero (0) to six (6) months. Historically, individuals facing a guideline calculation in this low range would substantially receive a period of probation. Mr. Lampi should be no different than any other defendant that received a calculation in this range. Mr. Lampi believes the appropriate sentence would be for a period of probation or a period of probation with a condition of home detention.

**B.  History and Characteristics of the Defendant.**

Mr. Lampi's personal history and characters weigh in favor of a guideline sentence. As discussed in the personal history section, Mr. Lampi was subject to a cruel and horrible upbringing by drug addict parents. One would think that he had no chance at any type of life, but Mr. Lampi has been able to put a life together that, until this recent matter, was one to be respected and admired. He earned college degrees, was gainfully employed, and achieved sobriety for several years.

**C.  The Need to Protect the Public from Further Crimes by the Defendant – Specific Deterrence.**

Mr. Lampi understands the seriousness of his actions. The Defendant has lived a substantial crime free life, and he was engaged in the trading of human body parts, which as mentioned earlier, is not a violation of criminal offenses, in and of itself. By the likelihood of the Defendant committing a crime in the future in minimal.

**D.  The Need to Provide Adequate Deterrence of Others – General Deterrence.**

The Government is seeking for this Court to legislate an activity which is not illegal. The Defendant understands the sensitivity of the allegations and how his activities and the trade of human body parts would stir an individual's emotions. It is not this Court's duty to act as the legislator, it is this Court's duty to decide the appropriate sentence under the circumstances. The Government would like the Court to super penalize the activity of the Defendant and others because of their activities. The proper venue to prevent the sale and transfer of human body parts is by proper legislation, not from the bench.

### E. Kinds of Sentencing Available.

A guideline range recommended is for 0-6 months. A period of probation or probation with condition of home detention is appropriate.

## VI.    <u>CONCLUSION</u>

Sentencing courts are, of course, charged with the responsibility of treating those that come before them as individuals. *See* <u>Koon v. United States</u>, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.") Courts are charged by Congress, as well, to impose a sentence that is sufficient but not greater than necessary to fulfill the goals of sentencing established by Congress. *See* 18 U.S.C. § 3553(a).  Mr. Lampi respectfully requests this Court to follow that tradition and to impose a sentence significantly below the advisory guideline range.

Matthew Lampi's participation in this multi-defendant matter is that he was, by the Government's own admission, the least culpable of all of the parties. Mr. Lampi was not involved in stealing or conspiring to steal any particular body parts. Mr. Lampi's connection was that he was an avid collector and trader of body parts. His role is distinctly different from the others involved. Accordingly, his sentence should be treated in a much different way than the others.

The Sentencing Guideline Range is between 0-6 months. Historically, individuals facing a sentence within that range have received probation. The Defendant understands, because of the nature and circumstances of the allegations, his matter may be somewhat different that other

similarly situated within that guideline range. The Defendant respectfully requests this Court to sentence him to a period of either probation, or probation with the condition of home detention.

Respectfully Submitted,


*s/ Joseph R. D'Andrea*
Joseph R. D'Andrea, Esquire
Attorney for the Defendant

Dated: 31 December 2024

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 4:23-CR-162** |
| | : | |
| **MATTHEW LAMPI** | : | |

## CERTIFICATE OF SERVICE

I, Joseph R. D'Andrea, Esquire, do hereby certify that I electronically served, via e-mail, a copy of the foregoing **Sentencing Memorandum**, to the following:

> Sean Camoni, Esquire
> Assistant United States Attorney
> William J. Nealon Federal Building
> 235 North Washington Ave
> Scranton, PA  18503

Date: 31 December 2024                    *s/ Joseph R. D'Andrea*
                                                        **Joseph R. D'Andrea, Esquire**
                                                        **Attorney for the Defendant**